Steven H. Haney, SBN 121980
Gregory L. Young, SBN 226293
**HANEY & YOUNG LLP**
1055 West Seventh Street, Suite 1950
Los Angeles, California 90017
Telephone:  (213) 228-6500
Facsimile:   (213) 228-6501
E-Mail:       shaney@haneyyoung.com

Attorneys for Plaintiff,
MICHAEL BRENT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRENT, an individual;<br><br>PLAINTIFF,<br>v.<br><br>THE BOEING COMPANY, a Delaware Corporation; BOEING DEFENSE, SPACE & SECURITY, a division of BOEING, business entity form unknown; BOEING NETWORK & SPACE SYSTEMS, a part of BOEING DEFENSE, SPACE & SECURITY, a business entity, form unknown, and DOES 1-10;<br><br>DEFENDANTS. | **CASE NO.: 2:17-cv-04429**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1) DISCRIMINATION BASED UPON RACE AND ENGAGEMENT IN PROTECTED ACTIVITY IN VIOLATION OF THE CALIFORNIA AND HOUSING ACT ("FEHA"), Cal. Gov. Code §12940(a),** *et. seq.***;**<br><br>**2) HARASSMENT BASED UPON RACE AND ENGAGEMENT IN PROTECTED ACTIVITY IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Cal. Gov. Code §12940(j),** *et. seq.***;**<br><br>**3) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND/OR RETALIATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Cal. Gov. Code §12940(k);**<br><br>**4) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br><br>**5) NEGLIGENT SUPERVISION;**<br><br>**6) NEGLIGENT RETENTION; AND**<br><br>**DEMAND FOR JURY TRIAL** |

1
**COMPLAINT FOR DAMAGES**

Plaintiff MICHAEL BRENT (hereafter sometimes referred to as "BRENT") alleges as follows:

## THE PARTIES

### PLAINTIFF

1. Plaintiff MICHAEL BRENT, an individual, is a current employee of The Boeing Company.

2. Plaintiff is, and at all relevant times herein was, an African-American employee of The Boeing Company, working at facilities in the City of El Segundo, in the County of Los Angeles, State of California.

### DEFENDANTS

3. Plaintiff is informed and believes that Defendant THE BOEING COMPANY (sometimes referred to herein as "Boeing") is a Delaware Corporation doing business, and employing over 16,000 people, in the State of California, with a major manufacturing and business facility in the City of El Segundo, County of Los Angeles.

4. Plaintiff is informed and believes that Defendant BOEING DEFENSE SPACE & SECURITY ("Boeing DS&S") is a division of Boeing doing business in the State of California.

5. Plaintiff is informed and believes that Defendant BOEING NETWORK & SPACE SYSTEMS ("Boeing NS&S") is a part of Boeing DS&S, which does business in the State of California.

6. At the time of the filing of this Complaint, Plaintiff is unaware of the true names and capacities of the Defendants, who are the employees, agents, representatives, co-conspirators and/or are otherwise acting on behalf of Defendants Boeing, Boeing DS&S and Boeing NS&S (hereafter collectively referred to as "Boeing"), and therefore sues these persons using the fictitious names Does 1-10, inclusive. Plaintiff will amend the Complaint to allege the true names and capacities

of the Doe Defendants when such have been ascertained. Defendants Boeing and Does 1-10 are sometimes hereafter collectively referred to as "Defendants."

7. Plaintiff is informed and believes and thereon alleges, that each of the fictitiously named Defendants are in some manner responsible for the occurrences, acts and omissions alleged herein, and that Plaintiff's damages as alleged herein were proximately caused by such occurrences, acts and omissions of said Doe Defendants, and by each of them. When Plaintiff alleges conduct against any Defendant hereafter, said Defendant will include the named Defendants and Defendant Does 1-10.

8. Defendants Boeing and Does 1-10 were and are at all relevant times acting as the agents, partners, joint venturers and co-conspirators of each other, with each act or omission being perpetrated within the scope of the agency, partnership, venture or conspiracy.

9. Plaintiff has suffered losses in excess of the jurisdictional minimum of the Court, which will be established according to proof at time of trial.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in the Federal Court pursuant to diversity jurisdiction per 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

11. Venue is proper in this District because the defendants and each of them have engaged in significant business operations, and the employment of thousands of people, in the County of Los Angeles, California, including a facility in El Segundo, wherein Plaintiff is or was employed, and wherein each of the harms to Plaintiff complained of herein occurred.

## FACTUAL ALLEGATIONS

12. In 1865, The United States Congress abolished slavery by passing the 13th Amendment to the Constitution. What followed were years of the infamous Jim Crow laws in the South, the Ku Klux Klan, and disparate treatment against African Americans, including the highest unemployment rate of any ethnicity in history, a widespread refusal by white America to promote African Americans to higher level

managerial positions, and unequal pay for African Americans doing the same work as their higher paid Caucasian co-employees. With the passage of the Civil Rights Act of 1964, it appeared America had turned a corner. The message was now clear: there was to be "no discrimination against persons based on race or ethnicity." While most of America got that message, it has become obvious that at least one major multi-cultural company either was not listening or simply chose to ignore the law. That company is Boeing.

13. Boeing has in its agreement with its employees a written policy that states:

> "The Employer and the Union agree that, in applying the terms of this Agreement, neither party will discriminate against any employee because of race, national origin, sex, age, color, creed, physical handicap, sexual orientation or for any other reason prohibited by law."

Boeing, specifically at its El Segundo, California location, has violated this policy by continuing its well-established pattern of creating a corporate culture wherein employees of African American descent are subjected to disparate treatment, harassment, public embarrassment, and ridicule by managers and colleagues, and a number of adverse employment actions including failure to be promoted to positions for which they are qualified, being initially hired into lower-tier jobs than comparably qualified Caucasian candidates, failure to receive preferred job assignments, failure to receive job assignments necessary for promotion, and/or termination.

14. The list of Boeing's violations of state and federal anti-discrimination laws is too long to recite. A few examples of Boeing's willful discrimination are:

1) A 1997 Boeing internal audit found that "Blacks received lower starting salaries than Caucasians" doing comparable work, and found Boeing exhibited "racial bias" against hiring African Americans.

2) Boeing dodged a bullet in 1998 when it paid 43 African Americans only $4.5 million for Labor Code violations in an

action brought by the U.S. Department of Labor. Boeing's Director of Employee Relations, Marcella Fleming, told Boeing management that "Boeing's potential liability in that case was $120,000,000."

3) In 1999, Boeing paid a large group of African American employees $15,000,000 in *Staton v. Boeing Co.*, Case No. CV-98-00761-JCC. Much more significant than the $15,000,000 payment is the fact that Boeing has paid $1.3 **billion** "off the books" to keep the quota industry and federal government investigators and regulators (e.g. EEOC and Department of Labor) off their backs.

Boeing's internal protections are inadequate to protect employees from discrimination. In its most recent transgression, members of the Human Resources department and managers tasked with preventing discrimination, including but not limited to Sandy Specht, openly exhibit discriminatory behavior and failed to properly investigate claims of racial discrimination.

15. In addition to its flagrant racial discrimination, Boeing, specifically at its El Segundo, California location, allows for systemic nepotism, creating an environment wherein senior or preferred Caucasian employees and Caucasian family members or associates of senior or preferred employees are hired into more desirable jobs, wrongfully provided with interview questions in advance of hiring or promotion interviews, and routinely transferred between jobs and departments in such a way to allow for their career advancement at the expense of similarly qualified employees who are not related to or associated with senior or preferred employees. These family members and associates of senior and preferred employees are also routinely transferred between jobs and departments in such a way as to insulate them from layoffs.

16. By allowing the nepotism described herein to occur, Boeing is blatantly violating its own internal policies and procedures, specifically, but not limited to, Procedure PRO-58, "employment of Relatives and Close Personal Friends."

17. Similarly, hiring and promotion decisions are sometimes affected by improper relationships between Boeing employees and employees of Boeing vendors, many of whom are former employees of Boeing themselves. These decisions sometimes also include nepotism and race discrimination. By way of example, Ron McFatridge, a former Caucasian employee of Boeing vendor Cicon, who came to work for Boeing before retiring, hired other former Cicon employees and promoted them ahead of other Boeing employees with more experience. Mr. McFatridge and the other former Cicon employees hired by Boeing then created an improper client-vendor relationship with Boeing, in violation of Boeing's own internal policies, to the detriment of Boeing itself, and to the detriment of its employees who are members of protected classes, including racial minorities, and those who are not members of the nepotistic preferred "old boy network" of Boeing employees.

18. As further example of the impermissible nepotism at the Boeing El Segundo facility, Boeing manager Chuck Brockett, Caucasian, was impermissibly involved in the hiring process for his nephew Cody Oleson, also Caucasian, and not only had direct input in Oleson's hiring, but was also Oleson's supervisor up until the time the Oleson was promoted to a salary position – leap frogging a number of more experienced and more qualified African American employees. What is more, Caucasian Boeing manager Brent Patchell was able to secure employment for his son, step-daughter, daughter-in-law, sister-in-law and brother-in-law, all Caucasian. Patchell's son, Curtis Patchell, and his step-daughter, Nicole Perez, were hired by Chuck Brockett, and initially worked under Brockett before quickly being promoted to salary positions, similar to the unjustified career advancement of Brockett's nephew, Oleson. Brockett also hired and quickly promoted Vanessa Sarria, who is the daughter in law of another long-time Boeing employee. Recently, Joshua Bristol, the

son of long-time Caucasian employee, Kenneth Bristol, was hired as a favor to his father. In all of these instances of nepotism, the perpetrators received at most a verbal warning, and often no punishment at all. This nepotism manifests itself as race discrimination.

19. African American employees at Boeing, El Segundo are frequently victims of disparate treatment. For example, Caucasian Boeing employee Brian Sullivan received a DUI while working remotely at a satellite launch and was given only the very mild punishment of being put on an alternate work week. African-American employees receive much harsher punishments for less serious infractions. Other instances of similar disparate treatment are set forth herein.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF BRENT**

20. Plaintiff MICHAEL BRENT is an African-American male who has been an employee of the Boeing Company for 26 years, and at this time is still employed by the company. Plaintiff is a veteran of the United States Air Force, in which he served for eight and one-half years before being honorably discharged. Plaintiff also holds an Associate's degree from Orange Coast College, an FAA License as an Airframe and Power Plant Mechanic, and a Ground Radio Operators FCC License.

21. Plaintiff is currently a Space Simulation and Laboratory Technician at Boeing. For the past two years, Plaintiff has made numerous requests for the Space Simulation Laboratory third shift Operations hourly lead man position, for which Plaintiff is highly qualified for. However, Plaintiff was denied the position each time.

22. Ultimately, the position was given to someone from another group who was not qualified for the position. Traditionally, the lead man position in Operations if given to the most senior Operations technician, which in the instant situation is Plaintiff herein.

23. Historically, three lead man positions are filled each shift: one in operations, one in fixtures, and one in instrumentation. These positions are typically filled by the person with the most experience. Though Plaintiff was the most senior

7
**COMPLAINT FOR DAMAGES**

candidate, Plaintiff requested to be given the position of second lead man. Only one position was filled by an employee who worked in fixtures, and who had no experience in operations. Up until recently, there has always been an Operations lead man on every shift. However, the current third shift lead man is only qualified in Fixtures, which does not qualify him as an Operations lead. By contrast, the first shift has five lead men, 2 in Operations, 1 in Instrumentation, 1 in Dynamics, and 1 in Fixtures. The second shift has three lead men, 1 in Operations, 1 in instrumentation, and 1 in Dynamics.

24. The individual given the lead man position instead of Plaintiff, Vince, was given the position as a result of his relationship with a Boeing supervisor named Quase. Vince is Quase's brother-in-law, and gave Vince the lead man position despite Vince's lack of qualifications. After Vince, who is only qualified in fixtures, received the lead man position, Plaintiff requested twice that a second lead man who was qualified in Operations be put on the third shift, as this is the practice that is upheld on other shifts. Plaintiff's request was denied both times.

25. Another instance of unfair treatment and nepotism involved the son of the lead man on the first shift, Scott. Scott's son, Shane, was assigned job assignments that he was not qualified. These assignments merited an experienced Operations technician to execute. Plaintiff, who was qualified for those jobs, had also made specific requests to receive those assignments, but was denied every time.

26. Another inexperienced technician, Matt, is the nephew of third shift's supervisor, Patrick. Patrick and his brother, Matt's father, had worked together for over ten years. Due to Boeing's nepotistic practices, Matt was given job assignments that he was underqualified for instead of Plaintiff, who had the technical skill, experience, and training necessary to qualify him for these job assignments.

27. Matt's lack of experience is evidenced by an incident that occurred regarding the C1 Chamber. It is imperative for an experienced chamber operator be in the C1 control room to perform operations such as pumping down, chilling, down,

and warming up the C1 satellite vacuum chamber. In fact, Plaintiff herein made a request to the supervisor, Patrick, and the lead man, Vince, for Plaintiff to operate the C1 satellite vacuum test. However, he was denied his request. Instead, Matt was given the job, and Plaintiff was even told explicitly not to help Matt unless Matt asked for help. Matt never asked for Plaintiff's help. Nevertheless, out of concern, Plaintiff offered his help no less than three times that night. As such, the inexperienced and underqualified Matt caused the C1 chamber to reach an alarm condition. Matt missed necessary steps during the chill-down process of the C1 Chamber on the third shift. He negligently left a valve open, and caused the dump tank to be filled with liquid nitrogen. This, in turn, resulted in a dense, large, gaseous cloud to seep outside of the building and into the El Segundo city intersection. El Segundo police were called the shut down the entire intersection, as it was unsafe for motorists as well as the general public. This dangerous incident could have been avoided had Boeing supervisors refrained from engaging in nepotistic and discriminatory practices and instead allowed an experienced Operation's technician to run the tests.

28. The next day, Boeing manager, William "Bill" Churley ("Churley"), sent both Plaintiff and Matt an e-mail requesting information regarding the incident regarding the C1 Chamber. Plaintiff informed Churley that he was denied the assignment to the C1 Chamber, despite his requests. After receiving that information from Plaintiff, and seeing Matt's name listed on the schedule during the time of the incident, Churley realized that it was Matt who had performed the test and caused the leak. Thereafter, the entire incident was brushed under the rug. The only corrective action taken was for the manager to send out procedures to be followed when performing the C1 VIASAT test. Sending out proper procedures and protocol after the fact only serves to highlight the fact that the person in the position is unqualified and untrained. Matt retained his position after this incident.

29. In 2015, Plaintiff contacted management as well as filed a complaint with the Human Resources department regarding an incident wherein Plaintiff's

Caucasian supervisor, Patrick, would repeatedly proclaim himself as a "redneck" and frequently make redneck jokes about himself. The asserted pride that Patrick had in identifying as a redneck conveyed disturbingly racist undertones. Further, Patrick made a point to tell Plaintiff about a shooting exhibition that took place in the Nevada desert. He showed Plaintiff a video of the large stores of weaponry. Patrick then told Plaintiff that he himself had an entire armory of weapons, and showed Plaintiff his arsenal, all the while bragging about the number of handguns and rifles he owned, and claiming that he could obtain whatever other weapon he wanted.

30.  Patrick's discriminatory conduct against Plaintiff, compounded with regular "redneck" jokes, associated language, graphic imagery and aggressive boasts about guns and other weaponry, had a profoundly threatening and intimidating effect. Notably, Plaintiff felt vulnerable and endangered. Plaintiff also believed that this action was a power play in retaliation against Plaintiff having filed a complaint with Human Resources regarding this supervisor.

31.  As a result of his complaint and due to his race, Plaintiff was retaliated against by being continually given worse job assignments, and by being isolated from the rest of the crew. For example, Plaintiff requested that he be given SSL Chamber Operations assignments, but was instead given up clean-up duties that should have gone to any of the green, inexperienced technicians. These calculated assignments were degrading, humiliating, and insulting based on Plaintiff's qualifications.

32.  Plaintiff has been qualified for the positions that he has applied for, and in the years that he has been in SSL Operations at Boeing, he has had an exemplary performance record. Plaintiff suffered numerous adverse employment actions, including, but not limited to, not receiving promotions because of his race, for engaging in a protected activity, and because of Boeing's improper nepotistic network practices in violation of Boeing's own internal policies. Plaintiff has also suffered attacks and damage insofar that other Boeing employees bully and retaliate against Plaintiff through actions including, but not limited to, spitting tobacco on the front

fender of his truck, which resulted in paint damage, tossing soda onto the front of Plaintiff's car, and stealing notes and papers out of Plaintiff's lunch box.

33. On February 1, 2017, Plaintiff MICHAEL BRENT filed an Administrative Complaint in compliance with the Department of Fair Housing and Employment ("DFEH"), in compliance with the applicable provisions of the government code. The DFEH issued BRENT a Notice of Case Closure and attendant Right to Sue notice authorizing this lawsuit.

## FIRST CAUSE OF ACTION

**(DISCRIMINATION BASED UPON RACE AND ENGAGEMENT IN PROTECTIVE ACTIVITY IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA"),**

**Cal. Gov. Code §12940(a), et. seq.;)**

**(By Plaintiff Against All Defendants and Does 1-10, inclusive)**

34. Plaintiff hereby incorporates by reference and re-allege each and every allegation contained in Paragraphs 1 through 33, inclusive, as if fully set forth herein.

35. Government Code Section 12940(a) makes it an unlawful employment practice for any employer to discriminate on the basis of race, by making unlawful said discrimination in compensation or in terms, conditions or privileges of employment. Government Code Section 12926(n) also states that "race" includes an employee who is associated with a person who has, or is perceived to have those characteristics.

36. Defendants violated this prohibition on discriminatory acts or omissions based upon race, and engagement in protected activity for making claims of discrimination, and for subjecting Plaintiff to disparate treatment as set forth in the Factual Allegations, above.

37. FEHA does not require that an employer's discriminatory act constitute one swift blow, rather than a series of subtle yet damaging injuries. The individual acts of discriminatory conduct as described herein, as well as the totality of such

conduct, constitute an adverse employment action. Moreover, FEHA protects an employee against unlawful discrimination with respect not only to "ultimate employment actions" such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely or materially affect an employee's job performance or opportunity for advancement in his career.

38. As a result of Defendants' discriminatory conduct, Plaintiff has suffered both economic and non-economic damages. Additionally, in committing the above-described acts, Defendants acted in a willful, oppressive and malicious manner towards Plaintiff and with the intent to vex, annoy, injure and harass Plaintiff in complete disregard to the harm that this conduct would cause. Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial against all Defendants except any Defendant who is specifically excluded by law from being liable for punitive damages.

## SECOND CAUSE OF ACTION
## (HARASSMENT BASED UPON RACE AND ENGAGEMENT IN PROTECTED ACTIVITY IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA"),
### Cal. Gov. Code §12940(j), *et. seq*.;)
### (By Plaintiff Against All Defendants and Does 1-10, inclusive)

39. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 38, as set forth above.

40. Government Code Section 12940(j) makes it an unlawful employment practice for any employer to harass an employee, or any person providing services thereto on the basis of race, or to create a hostile work environment based thereon. Government Code Section 12926(n) also states that racial harassment is actionable even if the employee is associated with a person who has, or is perceived to have those characteristics.

41. Defendants violated this prohibition on discriminatory and harassing acts or omissions based upon race and engaging in the California protected activity of filing a Fair Employment and Housing Act ("FEHA") claim with the Department of Fair Employment and Housing ("DFEH"), by, among other things, subjecting Plaintiff to the treatment as set forth in Factual Allegations ¶¶ 20-33, above, and in the allegations made by Plaintiff herein.

42. As a result of Defendants' harassing conduct, Plaintiff has suffered both economic and non-economic damages. Additionally, in committing the above-described acts, Defendants acted in a willful, oppressive and malicious manner towards Plaintiff and with the intent to vex, annoy, injure and harass Plaintiff in complete disregard to the harm that this conduct would cause him. Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial against all Defendants except any Defendant who is specifically excluded by law from being liable for punitive damages.

## THIRD CAUSE OF ACTION

**(FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND/OR RETALIATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA", Cal. Gov. Code §12940(k), et. seq.;)**

**(By Plaintiff Against All Defendants and Does 1-10, inclusive)**

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 42, as set forth above.

44. Government Code Section 12940(k) makes it an unlawful employment practice "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

45. Defendants violated this section by failing to prevent the discrimination and harassment, as set forth more specifically in Factual Allegations ¶¶ 20-33, and in the allegations made by Plaintiff herein.

46. As a result of Defendants' conduct, Plaintiff has suffered both economic and non-economic damages. Additionally, in committing the above-described acts, Defendants acted in a willful, oppressive and malicious manner towards Plaintiff and with the intent to vex, annoy, injure and harass Plaintiff in complete disregard of the harm that this conduct would cause him. Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial against all Defendants.

## FOURTH CAUSE OF ACTION

## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

## (By Plaintiff Against All Defendants and Does 1-10, inclusive)

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 46, as set forth above.

48. The conduct of various Boeing employees and former employees, including but not limited to, Mike Perez, Jim Bellows, Jim Schultz, Inga Coupe, Chuck Brockett, Heather O'Leary, Tom Senkevich, and Sandy Specht, among others, as set forth throughout, was extreme and outrageous, and done by with the intentional and/or reckless disregard of the probability of causing Plaintiff to suffer humiliation, mental anguish, emotional, and physical distress. Any racial discrimination cannot be tolerated by a civil society.

49. This conduct, as set forth *supra*, was a result of an intent to harass, retaliate, discriminate, and terminate Plaintiff, and ultimately inflict emotional distress upon Plaintiff.

50. Plaintiff suffered adverse employment actions on pre-textual grounds, but the true and only reason Plaintiff suffered adverse employment actions is because he is African American. Making decisions constituting adverse employment actions because of a person's race or ethnicity is oppressive and malicious, and constitutes extreme and outrageous conduct which goes beyond all bounds of decency and is atrocious and utterly intolerable in a civilized community. Boeing's veiled racism is no less damaging to affected persons than are openly and overtly racist acts. Indeed,

in an advanced society with post-racial aspirations, it is heavily-veiled and subconscious racism which is largely responsible for perpetuating the societal inequalities that continue to hinder the progress of, and oppress, racial minorities.

51. As a proximate result of the aforementioned intentional acts, Plaintiff has suffered humiliation, mental anguish, emotional, and physical distress manifesting itself in such physical symptoms general stress induced change in appearance and temperament. These damages are not presently calculable and are subject to proof at time of trial.

52. In committing the above-described acts, Defendants acted in a willful, oppressive and malicious manner towards Plaintiff and with the intent to vex, annoy, injure and harass Plaintiff in complete disregard to the harm that this conduct would cause him. Specifically, Plaintiff alleges, among other things, that he suffered various adverse employment actions, including terminations, failures to promote, failures to provide preferred and privileged job assignments which would allow for advancement, and hiring discrimination on the basis of their race; making decisions constituting adverse employment actions on the basis of race is outrageous conduct that goes beyond all bounds of decency and is atrocious and utterly intolerable in a civilized community. Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION
## (NEGLIGENT SUPERVISION)
**(By Plaintiff Against All Defendants and Does 1-10, inclusive)**

53. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 52, as set forth above.

54. Government Code, section 12940(k) makes it an unlawful employment practice "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

55. Defendants violated this section by failing to prevent the discrimination and harassment, as set forth more specifically in Factual Allegations ¶¶ 20-33, and in the allegations made by Plaintiff herein.

56. Accordingly, Government Code, section 12940(k) establishes a duty for an employer to take all reasonable steps necessary to prevent discrimination and harassment from occurring. This duty includes the proper supervision of its employees to ensure that discrimination and harassment do not occur.

57. By failing to properly supervise its employees, and by allowing the conduct as set forth in Factual Allegations ¶¶ 20-33, and in the allegations made by Plaintiff herein, to occur, Defendant Boeing breached its duty.

58. As a proximate result of that breach of duty, and of the ratification of discriminatory and harassing conduct of its employees, Defendant Boeing has caused Plaintiff to suffer damages, including monetary, and in some cases emotional, harms as set forth herein. These damages are not presently calculable, and will be established according to proof at time of trial.

59. As a result of Defendants' conduct, Plaintiff has suffered both economic and non-economic damages. Additionally, in committing the above-described acts, Defendants acted in a willful, oppressive and malicious manner towards Plaintiff and with the intent to vex, annoy, injure and harass Plaintiff in complete disregard of the harm that this conduct would cause him. Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial against all Defendants.

## SIXTH CAUSE OF ACTION
### (NEGLIGENT RETENTION)
**(By Plaintiff Against All Defendants and Does 1-10, inclusive)**

60. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 59, as set forth above.

61. Government Code, section 12940(k) makes it an unlawful employment practice "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

62. In some instances, including in the instant matter, all reasonable steps necessary to prevent discrimination and harassment from occurring should include the firing or dismissal of employees who commit discriminatory or harassing conduct.

63. Defendant Boeing owed, and continues to owe, Plaintiff a duty to fire, dismiss, or otherwise terminate employees who commit discriminatory or harassing conduct.

64. Defendant breached their duty to Plaintiff and others by negligently retaining employees who acted in a discriminatory or harassing manner and allowing by misconduct to continue unabated as set forth more specifically in Factual Allegations ¶¶ 20-33, and in the allegations made by Plaintiff herein.

65. As a proximate result of that breach of duty, and of the ratification of discriminatory and harassing conduct of its employees, Defendant Boeing has caused Plaintiff to suffer damages, including monetary, and in some cases emotional, harms as set forth herein. These damages are not presently calculable, and will be established according to proof at time of trial.

66. As a result of Defendants' conduct, Plaintiff has suffered both economic and non-economic damages. Additionally, in committing the above-described acts, Defendants acted in a willful, oppressive and malicious manner towards Plaintiff and with the intent to vex, annoy, injure and harass Plaintiff in complete disregard to the harm that this conduct would cause him. Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial against all Defendants.

## PRAYER FOR DAMAGES

1. For an award for all compensatory damages sustained by Plaintiff by reason of Defendants wrongful acts complained of herein;

2. For exemplary and punitive damages where allows by law;

17
**COMPLAINT FOR DAMAGES**

3. For a permanent injunction enjoining discriminatory, unfair, and unlawful business practices;

4. For costs of suit incurred herein;

5. For attorneys' fees as allowed by law; and

6. For such other and further relief as the Court may deem equitable, necessary, and just.

Dated: June 14, 2017                                          **HANEY & YOUNG, LLP**

By: /s/Gregory L. Young/
STEVEN H. HANEY
GREGORY L. YOUNG
Attorneys for Plaintiff,
MICHAEL BRENT

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial in this matter.

Dated: June 14, 2017

**HANEY & YOUNG, LLP**

By: /s/Gregory L. Young/
STEVEN H. HANEY
GREGORY L. YOUNG
Attorneys for Plaintiff,
MICHAEL BRENT

19
**COMPLAINT FOR DAMAGES**