MORGAN, LEWIS & BOCKIUS LLP
Larry L. Turner (*Admitted Pro Hac Vice*)
larry.turner@morganlewis.com
1701 Market Street
Philadelphia, PA 19103-2921
Tel:   +1.215.963.5000
Fax:   +1.215.963.5001

MORGAN, LEWIS & BOCKIUS LLP
Jason S. Mills, Bar No. 225126
jason.mills@morganlewis.com
Joseph V. Marra III, Bar No. 238181
joseph.marra@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

Attorneys for Defendants
THE BOEING COMPANY; BOEING
DEFENSE, SPACE & SECURITY; BOEING
NETWORK & SPACE SYSTEMS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRENT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE BOEING COMPANY, a Delaware corporation; BOEING DEFENSE, SPACE & SECURITY, a division of BOEING, business entity form unknown; BOEING NETWORK & SPACE SYSTEMS, a part of BOEING DEFENSE, SPACE & SECURITY, a business entity, form unknown and DOES 1-10,<br><br>Defendants. | Case No. 2:17-cv-04429-ODW-E<br><br>**DECLARATION OF ARLEEN SCHUSTER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Judge:         Hon. Otis D. Wright II<br>Date:          July 15, 2019<br>Time:          1:30 p.m.<br>Ctrm:          5D<br><br>Case Filed:       June 14, 2017<br>Pretrial Conf.:   August 19, 2019<br>Trial Date:       September 24, 2019 |

# DECLARATION OF ARLEEN SCHUSTER

I, Arleen Schuster, declare and state as follows:

1. I am currently employed by The Boeing Company ("Boeing") in the position of Human Resources Generalist (Level 4), a position I have held since 2003. I submit this declaration in support of Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. I know the facts in this declaration to be true of my own personal knowledge. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am employed in Boeing's Human Resources Department, and one of my areas of responsibility has been the Boeing Test & Evaluation ("BT&E") business group in El Segundo, California, for the past twelve years. My office has been in El Segundo during that period. Until April of 2018, I served as a Human Relations Business Partner ("HRBP").

3. In my capacity as HRBP, I am familiar with Michael Brent, an hourly technician in the El Segundo Space Simulation Lab ("SSL") under the BT&E organization.

4. In late October of 2015, in accordance with Boeing's policies, practices and procedures, William Churley informed me that Mr. Brent and his supervisor, salaried lead Patrick Sawyer, had a disagreement at work. Mr. Churley and I agreed that it would be appropriate for Mr. Churley (as opposed to Human Resources) to further investigate by interviewing the third shift employees. Mr. Churley then interviewed numerous Boeing employees who worked on third shift in the SSL.

5. Mr. Churley reported his findings back to me after completing several interviews of third shift employees, which employees had raised to Mr. Churley their concerns about Mr. Brent's work habits and demeanor towards them. None of the people interviewed raised concerns about Mr. Sawyer. Based on Mr. Churley's

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35549318.2

1                    DECLARATION OF ARLEEN SCHUSTER
                     2:17-cv-04429-ODW-E

report of what the third shift employees told him about Mr. Brent's behavior, Mr. Churley and I agreed that Mr. Churley should address the third shift's concerns directly with Mr. Brent in a coaching session.  I understand that Mr. Churley and Ms. Syas-Brandon did coach Mr. Brent on his workplace attitude and demeanor in March of 2016.

6. In April of 2018, Tien Van, a manager at El Segundo, informed me that Mr. Brent continued to request that Mr. Van appoint him as an hourly lead on third shift, but that Mr. Van had already explained to Mr. Brent that there was no business justification for an hourly lead on third shift at that time because there were only two technicians (including Mr. Brent) working on third shift.  Further, Mr. Brent was concerned that he was not being considered for the principal technician position, which was only available to technicians working on first shift. A true and correct copy of Mr. Van's April 20, 2018, email to me on this subject is attached hereto as **Exhibit 13**.

7. On June 24, 2018, Mr. Brent contacted me to request a meeting, and we met on June 27, 2018.  During that meeting, Mr. Brent explained that someone recently had spit chewing tobacco on his truck in the Boeing parking lot, and that this was not the first time this has happened to him.  He stated that someone did the same thing and also spilled soda on his automobile in the past.  He told me that he was worried and fearful, and that he reported this recent incident to security.  He then said he wanted to talk to someone in Human Resources about hourly lead positions, having spoken to his manager several times about it already.  He stated that other employees with less experience became hourly leads; although when he told me these other employees worked on first shift, I reminded him that SSL has more employees on first shift, and that there is a Lead Description document that stated that an hourly lead should be leading at least 5 employees.  I told him that I would send him a copy of that Lead Description.

8. Mr. Brent went on to state that his former salaried lead, Patrick

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35549318.2

2    DECLARATION OF ARLEEN SCHUSTER
2:17-cv-04429-ODW-E

Sawyer, retired and was replaced with another salaried lead. He also explained that the former hourly lead on third shift, Vince Cooney, had also retired and no hourly lead had been designated on third shift to replace Mr. Cooney. I asked Mr. Brent if he would be willing to move to another shift if an hourly lead opportunity became available. He said "No." He told me that he liked third shift and that it took him time to get approval to work on third shift.

9. I further told Mr. Brent that the El Segundo site has been reducing the number of hourly leads across the entire site, and has been pressuring BT&E to reduce its number of hourly leads, which BT&E has been striving to do—but BT&E still has the worst ratio of hourly leads to hourly technicians at the site, and needed to keep reducing the number of hourly leads, not making more hourly leads. I also explained to Mr. Brent that simultaneously, the work force in SSL is shrinking due to layoffs, which only exacerbates the problem of having too many hourly leads per hourly technicians.

10. Following the meeting, I emailed Mr. Brent a Lead Description document that contained information regarding Boeing's criteria for designating hourly leads and the ratio of hourly leads to technicians that Boeing seeks to maintain. I also provided Mr. Brent with the contact information for Todd Schroeder in Boeing's EEO department, as well as the hyperlink for Boeing's Ethics Support resources. A true and correct copy of my email to Mr. Brent and its attachment is attached hereto as **Exhibit 14**.

11. At Mr. Brent's request, I also arranged a further meeting, among myself, Mr. Brent, and Mr. Mejia, his senior manager, which took place on July 11, 2018. Mr. Brent explained that he felt like he was being ignored and overlooked, or possibly discriminated against in not being made hourly lead on third shift. Mr. Mejia reiterated much of what I told Mr. Brent at our prior meeting: BT&E has been tasked to reduce the number of hourly leads in SSL.

12. On July 12, 2018, Mr. Brent emailed me a copy of the report he filed

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35549318.2

3

DECLARATION OF ARLEEN SCHUSTER
2:17-cv-04429-ODW-E

with Allied Universal Security regarding the June 5, 2018 incident involving spit on his car window. In September, I contacted Boeing's El Segundo Site Security Focal Person, Theodore Svoronos, who liaises with Allied Universal Security. Svoronos told me that it is hard to trace saliva after it has been on a vehicle for a while, and Allied Universal Security had no video footage of the incident, and therefore was unable to determine who, if anyone, spat on Mr. Brent's car window in the early morning hours of June 5, 2018. Mr. Svoronos also informed me that the El Segundo site is undergoing a lot of construction and many outside contractors have been visiting the site, which raised the possibility it was not a Boeing employee who spat on the car. Finally, Mr. Svoronos also informed me that other vehicles in this parking lot had been tampered with recently; for example, some cars had their side view mirrors pushed in.

13. Mr. Brent emailed me on July 13, 2018, to thank me for my help, and reiterated that he felt there was a need for an hourly lead on third shift, and that Mr. Churley had made two Caucasian technicians hourly leads on first shift in February of 2017. Mr. Brent stated that he planned to take this information to Boeing's Ethics department. A true and correct copy of Mr. Brent's email to me is attached hereto as **Exhibit 15**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __7__th day of June 2019, at _El Segundo_, California.

_Arleen Schuster_
Arleen Schuster

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35549318.2

4

DECLARATION OF ARLEEN SCHUSTER
2:17-cv-04429-ODW-E