# United States District Court
# Central District of California

MICHAEL BRENT,

       Plaintiff,

    v.

THE BOEING COMPANY; and DOES 1-10, inclusive,

       Defendants.

Case No. 2:17-cv-04429-ODW (Ex)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [55]**

## I.  INTRODUCTION

Plaintiff, Michael Brent ("Brent"), brings this action against Defendant, The Boeing Company ("Boeing"), for various claims related to Boeing's decision to not promote Brent to an hourly lead position.  Brent alleges six claims relating to alleged racial discrimination and harassment.  Pending before the Court is Boeing's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment ("Motion").  (ECF No. 55.)  For the following reasons, the Court **GRANTS** Boeing's Motion.[1]

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.  FACTUAL BACKGROUND

Boeing argues that Brent has not provided sufficient evidence to establish a prima facie case for his claims.  (*See* Mem. of P. & A. in Supp. of Mot. ("Mem.") 11–12, ECF No. 56.)   In the alternative, Boeing argues that even if Brent is able to establish a prima facie case, Boeing proffers evidence that its actions were taken for legitimate, nondiscriminatory reasons, and Brent failed to show Boeing's reasons were pretext for discrimination.  (Mem. 14–15.)  For this reason, the factual background section focuses primarily on the evidence Brent presents, construing all disputed facts in his favor.

### A.  Brent's Employment with Boeing

Boeing employed Michael Brent, an African-American male, as a Space Simulation Laboratory ("SSL") technician for the past sixteen years.  (Pl.'s Statement of Additional Material Facts ("PSAMF") 149, ECF No. 74.)   Brent is an hourly technician in Boeing's SSL.  (*Id*.)  During Brent's tenure at Boeing, he was laid off seven times due to a decrease in business.  (Decl. of Michael Brent ("Brent Decl.") ¶ 5, ECF No. 70).  Yet, after each layoff, Brent was ultimately called back to work.  (*Id*.)  For the past three years, Brent's supervisor was Patrick Sawyer ("Sawyer"), a Caucasian male.  (*Id*.)  Brent's current manager is Tien Van ("Van"), an Asian-American male, and his former manager was William Churley ("Churley"), a Caucasian male.  (*Id*.)

Boeing's SSL is staffed in three shifts, and Brent serves on the third shift, which starts at 10:15 p.m. and ends at 5:15 a.m.  (Def.'s Statement of Uncontroverted Facts ("DSUF") 9, ECF No. 57.)  The SSL is administered by managers, who supervise non-union "salaried leads," non-union engineers, and union member technicians.  (DSUF 10.)  Managers have the sole discretion, if justified, to designate one or more hourly technicians on a shift as an "hourly lead."  (DSUF 16.)  Brent has repeatedly requested to become third shift "hourly lead."  (DUSF 53.)  However, Boeing never promoted Brent.  (PSAMF 155.)  Boeing informed Brent that there is no

business need for an "hourly lead" on third shift and declined to promote him. (DSUF 53.)

On February 1, 2017, Brent filed a claim with the Department of Fair Employment and Housing ("DFEH") and complained about race-based offensive behavior. (First Am. Compl. ("FAC") ¶ 33, ECF No. 10.) Ultimately, on June 14, 2017, Brent filed his Complaint against Boeing. (*See generally* Compl., ECF No. 1.)

**B.    Brent's Repeated "Hourly Lead" Promotion Requests**

In 2011 or 2012, Sawyer became Brent's supervisor. (PSAMF 157.) Brent subsequently requested the "hourly lead" position, but Boeing filled the position with David Gonzalez, a Hispanic male. (Suppl. Decl. of Joseph V. Marra III ("Suppl. Marra Decl.") Ex. A ("Sawyer Dep."), at 30:14–21, 38:17–39:4, ECF No. 83-1; Suppl. Marra Decl. Ex. B ("Cooney Dep."), at 72:23–73:2, ECF No. 83-3.) The following year, Brent told Sawyer "[i]t has been good working with you on 3rd shift. Best 3rd Shift Leader I [sic] ever known." (DSUF 58.)

At some point after David Gonzalez, Vince Cooney ("Cooney") became the hourly lead; however, on or about August 2017, Cooney retired from Boeing, leaving the "hourly lead" position vacant. (PSAMF 153.) Brent again requested the "hourly lead" position, but Boeing again declined the request. (*Id*.) Instead, Boeing left the "hourly lead" position unfilled, and stated that its decision was due to continuing decline in business and workforce downsizing. (Mem. 15.) After Boeing denied Brent's request, Brent suggested to Van that "perhaps the main reason is because of his race." (Decl. of Tien Van ("Van Decl.") Ex. 21, ECF No. 62-6.) Van insisted that the reason was because it was "impossible to justify . . . an hourly lead man" and told Brent "we will wait . . . and then we will evaluate if there is a need for additional hour lead man." (Van Decl. Ex. 16, ECF No. 62-1.)

**C.    Brent's SSL Satellite Launches Requests**

From September 2013 to May 2017, SSL conducted thirteen different satellite launch campaigns. (PSAMF 168.) Brent requested to be placed on the launch team

and allowed to travel to the launch sites. (*Id.*) Boeing declined Brent's request, stating that Brent was ineligible to attend the launches. (Suppl. Decl. of William Churley ("Supp. Decl. Churley") ¶¶ 3–4; ECF No. 82.) Brent concluded that Boeing declined his request because of his race. (PSAMF 158.)

**D.    Sawyer's "Redneck" Nickname and "Redneck" Cartoon Incident**

Since 2002, Brent knew that Sawyer went by the nickname "redneck." However, in 2014, Brent reported to his manager Churley and human resources representative Donna Syas-Brandon that Sawyer had a "cartoon in the workplace of a man wearing an ice cream bucket on his head while cutting concrete and bore the caption 'redneck safety glasses' and that he found the term 'redneck' to be offensive." (Decl. of Joseph V. Marra III ("Marra Decl.") Ex. 24Ba ("Brent Dep."), at 124:4–25, ECF No. 63-1; DSUF 59.) Additionally, Brent requested that Sawyer's "REDNECS" license plate be removed. (PSAMF 158.) Brent also demanded that Sawyer refrain from using his nickname "redneck" because Brent found the term to be "functional[ly] equivalent of a white man calling him [the N-word]." (PSAMF 158.) Churley made Sawyer remove the cartoon and license plate and told Sawyer to refrain from using his nickname "redneck" at work. (DSUF 62.)

**E.    Incident with Sawyer and Boeing's Subsequent on Investigation**

On an unspecified date, Sawyer told Brent "F*ck you, F you." (Brent Decl. ¶ 17.) On October 21, 2015, Brent and Sawyer had another verbal altercation. While the team conducted crane operations, Sawyer observed Brent and Stan Jolley ("Jolley"), an African-American engineer, sitting down. (DSUF 64.) Sawyer became upset and told Brent to either "get up or go home." (*See* DSUF 66.) Brent retorted that he was checking out push carts to Jolley and was waiting for the crane to come down. (DSUF 65.) Brent informed Churley about the altercation, and Churley then initiated an investigation. (DSUF 69.)

Churley interviewed seven employees who were either on third shift or witnessed the interaction between Sawyer and Brent. (*Id.*) Churley concluded that

Brent had sat in the chair for only a couple of minutes before both Brent and Sawyer raised their voices. (Decl. of William Churley ("Churley Decl.") Ex. 10, at 2, ECF No. 60-1.) Neither yelled nor swore. (*Id*.) Brent reported that he did not like Sawyer's "redneck" nickname, that Sawyer often discussed his firearms hobby at work, and showed-off his firearms related videos. (PSAMF 159.) On occasion, while sitting at his desk, Sawyer would assemble his rifle scope in plain view. (*Id*.) Brent told Churley that he hoped Sawyer "would not do anything to get back at him." (*Id*.)

In Brent's December 8, 2017 deposition, he was asked if he knew why Sawyer had showed him his firearm videos. Brent responded, "I guess to brag, boast . . . I wasn't the only person he showed these videos to." (Brent Dep. at 117:18–23.) Brent also testified in his deposition that he was in good mental and physical health, had not seen a mental healthcare provider in the last three years, did not feel a need to see anyone who is a mental healthcare provider, and boasted about his 91 percent Boeing wellness score. (Brent Dep. 11:18–15:6.) However, in Brent's Declaration dated May 30, 2019, Brent stated that Sawyer caused him to suffer severe emotional distress. (Brent Decl. ¶ 15.)

Following Churley's investigation, Boeing provided Brent and Sawyer feedback on how to interact with dignity and respect. (DSUF 80.) Brent stated that he was satisfied with how Boeing handled his complaints. (DSUF 83.) Nevertheless, Brent informed Boeing that he still felt that he was a target and victim of discrimination. (Brent Decl. ¶ 70.)

**F.    Sawyer Assigns Brent Non-Preferred Tasks**

In August 2016, Brent reported to Churley that Sawyer did not assign him his preferred assignment. (DSUF 84.) Brent reported that, on thirteen different occasions, Sawyer assigned Brent to menial tasks, including re-taping and removing tape from the SSL floors, and assigned lesser-qualified technicians to the preferred spacecraft testing. (Brent Decl. ¶ 16; PSAMF 133.) Brent states that Sawyer assigned

him to menial task based on his race. (PSAMF 133.) Yet, Sawyer also assigned Cooney, the hourly lead and a Caucasian male, to the same menial tasks. (DSUF 84.)

**G. Sawyer's DFEH Complaint & February 24, 2017 Communications**

On February 1, 2017, Brent filed a complaint with the DFEH, claiming that he experienced discrimination, harassment, and retaliation. (DSUF 93.) Also, on February 24, 2017, Brent informed Churley that he endured the following harassment: (1) someone spat snuff on Brent's front fender causing damage; (2) someone splashed soda on Brent's car; and (3) someone took items from Brent's lunch box. (DSUF 100.) Brent informed Churley that he considered these hate crimes, and that Churley did not know about these events because Brent did not advertise them. (DSUF 98–99.) Brent also told Churley that Sawyer was ordering him to take before and after pictures of his work, and asked whether the reason was to justify his work accomplishments. (PSAMF 164; Churley Decl. Ex. 12, at 3, ECF No. 60-3.) Finally, Brent asked Churley not to disclose the information because Brent feared retaliation. (Churley Decl. Ex. 12, at 3)

Thereafter, Churley asked Brent to bring him all past or future incidents or issues as soon as possible. (*Id*. at 2.) Churley also asked Brent to provide him additional information and details concerning the hate crime incidents so he could investigate. (*Id*.) Churley informed Brent that the photographs were not about Brent's work, but rather to justify the overhead budget. (*Id*.) Brent replied on March 13, 2017, that he reported the incidents to Allied Barton Security, but otherwise provided no further information or details. (*Id*. at 1.) Brent even stated that "[t]here was no need for investigation, this kind of stuff happens all the time. You remember the jokes." (*Id*.) Concerning the photos, Brent stated that he was the only one taking the pictures on his shift, and that it was not really a problem. (*Id*.)

After filing his complaint with the DFEH, Brent requested an immediate right to sue and filed this lawsuit against Boeing on June 14, 2017. (DSUF 94.)

### III.     LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should

set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV.    DISCUSSION[2]

California's Fair Employment and Housing Act ("FEHA"), California Government Code section 12940 *et seq.*, makes it unlawful for an employer to not promote or discriminate against an individual based on that person's race. Cal. Gov't Code § 12940(a).

The California Supreme Court adopted the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), to analyze disparate treatment claims. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000). Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Id.* If the plaintiff establishes a prima facie case , then a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.* at 355. If the defendant states a legitimate, nondiscriminatory reason, then the presumption is negated, and the burden shifts back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination. *Id.* at 356.

However, when an employer moves for summary judgment, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th

---

[2] Both parties have filed objections to evidence asserted by the opposing party. The Court overrules the objections to evidence on which the Court has relied. All other objections are overruled as moot. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006).

Cir. 2011) (internal quotation marks omitted). To prevail on summary judgment, the employer is required to "show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013) (alterations in original). If the employer meets its burden, then the "employee must demonstrate either that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Id.* (internal quotation marks omitted) (omission in original).

Here, Brent asserts claims for racial discrimination; harassment based on race; failure to prevent discrimination, harassment, and retaliation; intentional infliction of emotional distress ("IIED"); negligent supervision; and negligent retention. Boeing moves for summary judgment on all of Brent's claims.

## A. Statute of Limitations and the Continuing Violation Doctrine

FEHA provides an administrative review procedure for employment claims. *See* Cal. Gov't Code § 12960. Pursuant to the administrative review scheme, an employee asserting FEHA claims against an employer must file an administrative complaint with the DFEH within one year of the date the alleged unlawful practice occurred. Cal. Gov't Code § 12960(d). Also, an employee must timely file an administrative complaint to bringing a civil action under FEHA. *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996). This requirement functions as a statute of limitations for alleged unlawful acts that occurred more than one year before the filing of an administrative complaint with the DFEH. *Rodriguez v. Airborne Express*, 265 F.3d 890, 900 (9th Cir. 2001) (explaining that "[t]he administrative time limits prescribed by FEHA are treated as equivalent to statutes of limitations").

Brent argues that the statute of limitations does not apply because the continuing violation doctrine applies. In determining whether the continuing violation doctrine applies, courts consider (1) the similarity between the employer's conduct

before and within the limitations period, (2) whether the conduct occurred with reasonable frequency, and (3) whether the conduct had acquired a degree of permanence before the limitations period. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1059 (2005). Generally, an employer's decision not to hire or promote a plaintiff is an "isolated employment decision[ ]," not part of a continuing violation. *See Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 66–67 (2000); *Alvarado v. FedEx Corp.*, No. C 04-00098 SI, 2006 WL 644875, at \*21 (N.D. Cal. Mar. 13, 2006) ("Discrete discriminatory acts such as the failure to promote constitute separate actionable employment practices, and the limitations period on each begins to run when the practice occurs.").

Here, Brent asserts various actions were committed by Boeing that violates FEHA. Some of the alleged actions occurred more than a year before February 1, 2017, when Brent filed his DFEH complaint. Simply, Brent states that "[t]he facts show a years-long campaign of discrimination against Brent." (Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") 16, ECF No. 69.) Yet, Brent does not set forth any analysis to explain what alleged acts predate the limitations period. Nor does Brent explain how those acts are sufficiently similar to the alleged acts within the limitations period. Rather, Brent leaves it to the Court to speculate which of the alleged acts predate the limitations period.

Even if Brent had appropriately addressed the continuing violation doctrine, courts have held, generally, an employer's decision not to hire or promote a plaintiff is an "isolated employment decision," not part of a continuing violation. *See Morgan*, 88 Cal. App. 4th at 66–67; *Alvarado*, 2006 WL 644875, at \*21. Therefore, without more support, the doctrine does not allow Brent to enlarge his FEHA claims to include events that occurred before February 1, 2016.

Accordingly, the continuing violation doctrine does not apply here, and Brent's FEHA claims are limited to conduct that occurred after January 31, 2016.

**B.  Racial Discrimination in Violation of FEHA**

Brent asserts that Boeing subjected him to racial discrimination by repeatedly denying him promotion, assigning him to menial tasks, excluding him from SSL launches, and uttering racial indignities towards him.  (Pl.'s Opp'n 15.)  To state a prima facie case of discrimination under FEHA, a plaintiff must show that: (1) he "was a member of a protected class"; (2) he "was qualified for the position he sought or was performing competently in the position he held"; (3) he "suffered an adverse employment action"; and (4) the employer acted with discriminatory motive or "some other circumstance suggests discriminatory motive."  *Guz*, 24 Cal. 4th at 355; *see also Lawler*, 704 F.3d at 1242.  Once a plaintiff has established a prima facie case, the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the action.  *McDonnell*, 411 U.S. at 802.  The plaintiff then must offer some evidence that the defendant's proffered reason is a pretext.  *Id.* at 804.  Evidence of "implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's justification can satisfy this burden.  *See Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 314–15 (2010); *Ewing v. Gill Indus., Inc.*, 3 Cal. App. 4th 601, 615–16 (1992), *modified* (Feb. 13, 1992).

Brent's allegation of enduring racial indignities, other than to support the establishment of discriminatory motive for his racial discrimination claim, is misplaced.  Brent may not argue that basis of his racial discrimination claim is racial indignities.  *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707, *modified* (Feb. 10, 2010) (stating "discrimination refers to bias in the exercise of official actions on behalf of the employer.").  Instead, Brent's allegation of enduring racial indignities provides him a claim of racial harassment.  *Id*.  Accordingly, the court addresses Brent's allegation of racial indignities in the racial harassment section below.

### a.  Denial of Promotion

Boeing bears the burden to show that Brent could not establish one of the elements of his FEHA racial discrimination claim or that there was a legitimate,

nondiscriminatory reason for its decision to not promote Brent in 2017. Boeing argues that Brent failed to set forth evidence that it acted with a discriminatory motive, and relatedly, that Brent was denied promotion for legitimate, nondiscriminatory reasons.

Boeing states and supports with admissible evidence that Brent was denied the "hourly lead" position for the following reasons: (1) there is a decreasing volume of work moving through SSL on third shift; (2) SSL has been under ever-increasing pressure to cut the number of hourly leads since 2015 and has done so; (3) no one has been appointed hourly lead on third shift since Cooney's retirement in September 2017; (4) Boeing strives for a ratio of five technicians per one lead absent compelling business justifications to exceed that ratio; (5) the number of technicians on third shift has been below five since July 2017; and (6) there is no compelling business justification for designating an hourly lead on third shift in Boeing's current business situation. (Mem. 15; Churley Decl. ¶ 7; Marra Decl. Ex. 25 ("Churley Dep."), at 15:18–16:4, ECF No. 63-6; Van Decl. ¶¶ 10–14; Brent Dep. at 47:17-25, 56:21-57:1; Declaration of Barbara Krubski ("Krubski Decl.") ¶ 7.)

Brent fails to offer contradictory evidence to create a material issue of fact as to whether Boeing's proffered reasons are pretextual. Rather, Brent relies on the allegations that: (1) "Third shift . . . has always had a lead technician," (2) for the past 33 years no African-American employee was ever promoted to lead on third shift; (3) he was the obvious choice for replacing Vincent Cooney upon retirement; and (4) Van informed him that he was being considered for the position. (Pl.'s Opp'n 19.)

Brent's first three reasons are unsupported conclusory allegations, not evidence of "implausibilities, inconsistencies, incoherencies, or contradictions," and therefore, are not material. *Thornhill Publ'g Co.*, 594 F.2d at 738. (holding that conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.) Regarding the fourth, although Brent contends Van informed him that he was "being considered" for the "hourly lead" position, the record

reflects otherwise. Boeing submits evidence which shows that Van told Brent "we will wait . . . and then we will evaluate if there is a need for additional hour lead man." (Van Decl., Ex. 16 at 1.) Van prefaced the comment by informing Brent that it was "impossible to justify an hourly lead man" at that time. (*Id*.) Moreover, Brent concedes in his deposition that Van told him "[w]e're not going to have a lead at this time." (Brent Dep. at 56:4–57:1.) Lastly, Brent also concedes that Boeing had laid him off seven times due to a decrease in business. (Brent Decl. ¶ 5.) Accordingly, Brent fails to establish a material factual dispute regarding whether Boeing's legitimate business reasons were actually pretext. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (finding no pretext where plaintiff created only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted independent evidence that no discrimination had occurred.) Brent has failed to contradict Boeing's nondiscriminatory reasons for denying him the promotion to hourly lead, and therefore, has not established that Boeing reasons are pretextual.

### b. Assignment to Less-Preferred Tasks – Non-discriminatory Reasons and Pretextual Evidence

Next, Brent alleges that Sawyer assigned him menial tasks, and assigned lesser-qualified technicians to the preferred spacecraft testing, because of Brent's race. Brent alleges that this happened at least thirteen times and that Sawyer never explained why. Boeing proffers the following nondiscriminatory reason for these task assignments: "all technicians in SSL, regardless of skill level, are given tasks that do not call upon their full skill set as SSL technicians, but which are necessary to the maintenance of the lab." (Mem. 16; Decl. Churley ¶ 13). For example, Sawyer also assigned Cooney, a Caucasian male and former "hourly lead," to the same menial tasks. (Dep. of Vincent Cooney ("Cooney Dep.") 52:2–17, ECF No. 63-8.) Consequently, Brent was assigned tasks comparable to his colleagues, tasks which also did not utilize their full skill set.

Brent opposes Boeing's non-discriminatory reason as pretextual by asserting that he was "assigned menial tasks not assigned to similarly situated Caucasians." (Brent Decl. ¶ 16.) But Brent provides only one concrete example when a lesser qualified Caucasian employee was treated more favorably than him and received a preferred assignment. (*See id.*) Also, Brent does not materially dispute that Sawyer also assigned Cooney to menial tasks that did not call upon his full skill set, which included peeling tape off the floor. (Cooney Dep. 52:2–17.)

Accordingly, Brent creates only a weak issue of fact as to whether Boeing's reason was untrue, whereas "substantial evidence from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual," is required. *Reeves*, 530 U.S. at 148; *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1113 (2007). Consequently, Brent fails to contradict Boeing's nondiscriminatory reason as to why Brent was assigned less-preferred tasks.

### c. Exclusion from SSL Launches – Non-discriminatory Reasons and Pretextual Evidence

Brent alleges that he was excluded from traveling to thirteen satellite launches[3], from September 2013 to May 2017, because of his race. (Brent Decl. ¶ 24.) Boeing responds with the following non-discriminatory reasons as to why Brent was excluded from traveling to the satellite launches: (1) SSL hourly technicians are not assigned to attend satellite launches; (2) Brent was ineligible to attend any of the launches he

---

[3] Brent filed a Notice of Errata, purportedly correcting a "clerical error" replacing the word "launches" with "tests." (*See* Not. of Errata, ECF Nos. 89–90, 96.) "Generally, no briefing on a motion is permitted beyond the opposition and reply, absent leave of the Court." *Johnson v. Cate*, No. 1:10-CV-00803-AWI-MJS (PC), 2015 WL 5321784, at *3 (E.D. Cal. Sept. 10, 2015). Brent's Notice of Errata and supplemental documents, which were submitted after Defendant's Reply, include new evidence that attempts to correct some of the deficiencies identified by Defendant's Reply. Though couched as a "Notice of Errata," there is no doubt that Brent is introducing new arguments and evidence for the Court's consideration, including a second amended expert report, well after the discovery cut-off date. As a Notice of Errata is intended to correct clerical errors, not evidentiary problems, *see Bias v. Moynihan*, 508 F.3d 1212, 1223–24 (9th Cir. 2007), the Court construes the Notice of Errata as an impermissible sur-reply. Accordingly, the Court declines to consider Brent's Notice of Errata in addressing Defendant's motion for summary judgment.

listed; (3) SSL is not involved in launch work; (4) SSL technicians are not paid on a twenty-four-hour, seven-days per week basis, but are paid hourly for actual hours worked on their assigned SSL shifts; (5) hourly lead technicians are not guaranteed any specific type of work on any shift in SSL. (Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply") 6–7, ECF No. 78.) Boeing supports these proffered reasons with the Declarations of Churley and Van. (*See* Suppl. Decl. of William Churley ("Suppl. Churley Decl.") ¶¶ 3–4, ECF No. 82; Van Decl. ¶¶ 8–9.)

Brent opposes Boeing's proffered legitimate non-discriminatory reasons by stating that "Caucasians are sent to [] lucrative satellite tests in place of Brent." (Pl.'s Opp'n 19.) However, Brent does not provide any evidence or facts to refute Boeing's proffered and supported legitimate business reasons why Brent was not eligible or chosen to attend launches. He fails to even allege (1) that SSL hourly technicians attend launches; (2) how management determines which technicians attend a launch; (3) that Brent was eligible to attend any of the launches he listed; (4) which SSL Caucasian employees went in place of Brent; (5) selection criteria for SSL launch attendance; or (6) that Brent requested to attend the launches. Consequently, Brent has failed to show that of Boeing's legitimate non-discriminatory reasons are pretext.

In sum, summary judgment on Brent's claim for Racial Discrimination is proper because Boeing states legitimate nondiscriminatory reasons for denying Brent the third "hourly lead" position, assigning Brent to non-preferred tasks, and denying him assignment to travel to satellite launches, and Brent fails to demonstrate that the proffered reasons were mere pretext for discrimination. Accordingly, Boeing is **GRANTED** Summary Judgment on Brent's Racial Discrimination claim.

## C.   Racial Harassment in Violation of FEHA

To state a prima facie case for racial harassment, Brent must show: "(1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work

environment; and (5) the [employer] is liable for the harassment." *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876 (2010); *see also Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 264 (2009) (whether workplace harassment is sufficiently "severe" or "pervasive" assessed from the "perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff"). "Isolated, sporadic, or trivial" comments are insufficient to establish FEHA harassment. *Daniel v. Wayans*, 8 Cal. App. 5th 367, 389 (2017).

"Unlike discrimination claims, harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.'" *Lawler*, 704 F.3d at 1244 (quoting *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998)). "For example, 'commonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, [and] performance evaluations, . . . do not come within the meaning of harassment.'" *Id.* (quoting *Reno*, 18 Cal. 4th at 646–47) (alterations in original). Even where the conduct in question is "unrelated to business and personnel management, a single incidence of . . . 'gruff,' 'abrupt,' and 'intimidating' behavior . . . is not sufficiently severe to constitute a hostile working environment." *Id.* at 1245.

Boeing contends that Brent's harassment claim fails, first, because none of the conduct he alleges qualifies as "harassment" under the FEHA, and second, because the alleged harassment was not based on Brent's race. *Id.* at 1244. (determining that instruction to perform work-related assignments do not qualify as "harassment"). Boeing argues that Brent has not satisfied the second and third elements of a racial harassment claim, and therefore, had not made a prima facie showing.

Brent concedes that a "severe or pervasive" standard applies to conduct covered by a harassment claim. Yet, Brent provides no factual citations or analysis to support his claim for race-based harassment. Instead, he merely states "he clearly was subjected to unwelcome harassment in the examples set forth above." (Pl.'s Opp'n

20.) In short, Brent has left it to the Court to comb through his Opposition and supporting Declaration to guess what "triable facts" he references to support his claim.

As discussed above, any incidents prior to January 31, 2016, are time barred by the statute of limitations. Accordingly, the Court considers only alleged incidents of racial harassment that occurred after January 31, 2016. The Court considers the following allegations of racial harassment: (1) Sawyer made Brent take photographs of his work projects; (2) Sawyer told Brent "F*ck you, F you;" (3) an unidentified person at an unspecified time spat tobacco on Brent's truck; (4) an unidentified person at an unspecified time spilled soda on Brent's car; and (5) unidentified persons at an unspecified times took a items from Brent's lunchbox. (*See generally* Pl.'s Opp'n 6–12, 19–20.)

Brent alleges that Sawyer ordering Brent to photograph his work projects and Sawyer telling Brent "F*ck you, F you," establish abusive conduct and offensive comments that were sufficiently severe or pervasive to alter the conditions of his employment. However, Sawyer ordering Brent to photograph his work projects is a "necessary personnel management action," which does not come within the meaning of harassment. (Churley Decl. Ex. 12, at 2); *Lawler*, 704 F.3d at 1244 ("commonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, [and] performance evaluations, . . . do not come within the meaning of harassment."). Here, Boeing has proffered evidence in the form of Churley's declaration stating that that the photographs were not about Brent's work, but rather to justify the overhead budget. (Churley Decl. Ex. 12, at 2.) Moreover, Brent has not provided any evidence, other than his self-serving declaration, that he was ordered to take photographs because he is African-American.

Concerning Sawyer telling Brent "F*ck you, F you," the incident is not sufficiently severe to constitute a hostile work environment. Although the comment is "unrelated to business and personnel management," Brent provides no other concrete example demonstrating, other than this one instance, that Sawyer spoke to him in

profanities. Nor that the comment made by Sawyer was made because of Brent's race. Accordingly, Brent has failed to demonstrate that the comment is more than a "single incidence of . . . 'gruff,' 'abrupt,' and 'intimidating' behavior," and therefore, is not sufficiently severe to constitute a hostile working environment." *Id*. at 1245; *Daniel*, 8 Cal. App. 5th at 389 (holding that "[i]solated, sporadic, or trivial comments" are insufficient to establish FEHA harassment).

Brent alleges that the remaining incidents constituted a concerted pattern of harassment. However, Brent admitted that he did not know who vandalized his truck or who took items from his lunchbox. (Brent Dep. at 98:18–99:8, 159:1–18.) Moreover, Brent proffers no evidence to suggest that these incidents are connected to his race, other than his own general and conclusory allegations. Brent has failed to demonstrate that the alleged vandalization of his truck and the intrusions into his lunchbox were based upon Brent's race. *See e.g., Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) ("[G]eneral and conclusory allegations concerning the alleged discriminatory history of [defendant] fail to raise a material issue of fact."). Furthermore, Churley asked Brent to provide him additional information and details concerning the hate crime incidents so he could investigate. (Churley Decl. Ex. 12, at 2.) Brent replied on March 13, 2017, that he reported the incidents to Allied Barton Security, but otherwise provided no further information or details. (*Id*. at 1.) Brent even stated that "[t]here was no need for investigation, this kind of stuff happens all the time. You remember the jokes." (*Id*.)

Here, the absence of any facially race-based conduct directly or circumstantially involving Brent makes it problematic for him to establish a severe or pervasive hostile work environment for the purposes of harassment claim based on race. *Patterson v. Boeing Co.*, No. CV 16-7613-GW (SKX), 2018 WL 5937911, at *24 (C.D. Cal. Apr. 4, 2018) (concluding that a lack of any facially race-based conduct . . . makes it much more difficult for [Plaintiff] to establish any showing of a severe or pervasive hostile work environment). Generally, "[w]hether an employee was subjected to a hostile

environment is ordinarily one of fact," but here, Brent has not countered Boeing's evidence and arguments that he did not suffer harassment based on his race. *Id*. (quoting *Nazir*, 178 Cal. App. 4th at 264.). Consequently, the Court **GRANTS** Boeing's Motion against Brent's claim for harassment under FEHA.

**D.    Failure to Prevent Discrimination, Harassment, or Retaliation**

It is well-settled law that no action lies for failure to take necessary steps to prevent discrimination or harassment if no such conduct in fact occurs. *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 284 (1998) (finding that "[t]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred"); *see also Thompson*, 186 Cal. App. 4th at 880; *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1315–1316 (2015) (stating that harassment not severe or pervasive enough to violate FEHA cannot support claim for failure to prevent sexual harassment and that the same rationale applies where unlawful discrimination claims do not rise to level of statutory violation).

Here, Brent brings a failure to prevent claim against Boeing. Nevertheless, for the same reasons that the Court has provided above, Brent fails to create a triable issue of material fact as to his racial discrimination claim and racial harassment claim. Consequently, his claim for failure to prevent discrimination, harassment, or retaliation in violation of California Government Code section 12940(k) must also fail.[4] *Trujillo*, 63 Cal. App. 4th at 289 ("Employers should not be held liable for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented."). Consequently, summary judgment on this issue is

---

[4] Brent also brings a failure to prevent retaliation claim but did not bring a retaliation cause of action under California Government Code section 12940. Accordingly, Brent has not made a prima face showing for a retaliation claim. Consequently, the Court finds that Brent may not sustain a failure to prevent retaliation claim against Boeing.

proper. The Court **GRANTS** Boeing's motion as to Brent's failure to prevent claim under FEHA.

**E.      Intentional Infliction of Emotional Distress**

To establish a prima facie claim for IIED, Brent must show: (1) extreme and outrageous conduct by Boeing; (2) intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).

Generally, California's Worker's Compensation Act provides the exclusive means for redress of personal injuries that arise in the workplace. *See* Cal. Lab. Code § 3200. Accordingly, IIED claims and negligence claims arising in the course of employment are barred "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148 (1987); *see also Miklosy v. Regents of Univ. of Cal.*, 44 Cal.4th 876, 902–03 (2008).

Brent alleges Boeing's conduct was extreme and outrageous by subjecting him to "racially offensive material" and for not promoting him once, in sixteen years. (Pl.'s Opp'n 23.) However, Boeing argues that the Court should dismiss Brent's IIED claim for the following reasons: IIED is barred by California's worker's compensation; Brent has not identified any sufficiently outrageous conduct; Brent has not provided any facts of record demonstrating that he suffered severe emotional distress. (Def.'s Reply 10–11.)

Boeing's decision to not promote Brent does not rise to the level of extreme and outrageous conduct. Foremost, promotions are unquestionably conduct that is part of the normal employment relationship. *See Cole*, 43 Cal. 3d at 160. Accordingly, workers' compensation exclusivity applies to Brent's IIED claim; thus Brent's claim is barred by such doctrine. *Kaldis v. Wells Fargo Bank, N.A.*, 263 F. Supp. 3d 856,

867–68 (C.D. Cal. 2017) (barring IIED claim based on Defendant's decision to not promote Plaintiff).

Additionally, Brent did not assert evidence that he suffered any emotional distress. Here, Brent does not cite to any facts or law in support of his argument, but instead, merely proclaims that "[i]t is very clear that Brent suffered severe emotional distress."[5] (Pl.'s Opp'n 22.) Brent states in his declaration that he "suffer[ed] severe emotional distress, and that Sawyer's conduct was a substantial factor in causing [him] to suffer severe emotional distress." (Brent Decl. ¶ 15.) However, at summary judgment, Brent must provide more than conclusory statements, instead he must provide facts and evidence of his severe emotional distress. *Papadopulos v. Arturo Salice S.p.A.*, 232 F.3d 896 (9th Cir. 2000) (affirming district court decision to grant summary judgment when Plaintiff relied on conclusory allegations and failed to introduce evidence to demonstrate that his emotional injuries were substantial or lasting).

Brent fails to do so here. At his deposition, Brent answered that he was in good mental and physical health, had not seen a mental healthcare provider in the last three years, did not feel a need to see anyone who is a mental healthcare provider, and boasted about his 91 percent wellness score. (Brent Dep. at 11:18–15:6.) Accordingly, a reasonable trier of fact could not conclude that Brent has endured severe emotional distress. *Tyler v. Boeing Co.*, No. CV 16-07610-AB (KSX), 2018 WL 4742286, at *11 (C.D. Cal. Feb. 2, 2018) (finding that a reasonable trier fact could not conclude Plaintiff suffered severe emotional distress after stating she was in good mental and physical health at her deposition).

Accordingly, summary judgment on this issue is proper. The Court **GRANTS**

---

[5] Brent filed the Declaration of Dr. Emil Soorani (ECF No. 71); however, Brent neither mentions nor cites Dr. Soorani's declaration to support his IIED argument. (Pl. Opp'n. 21–22.) Accordingly, it is not the district court's task "to scour the record" for support to the parties' arguments. *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). The parties bear the obligation to lay out their support clearly. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). Brent has failed to do so here.

Boeing's Motion as to Brent's IIED claim.

**F. Negligent Supervision and Negligent Retention**

To state a negligent supervision or retention claim, the plaintiff must show that (1) the employer owed a legal duty to use due care, (2) the employer breached that duty, and (3) the breach proximately caused harm to the plaintiff. *Trujillo*, 63 Cal. App. 4th at 286–87. Employers have a statutory duty to take all reasonable steps to prevent discrimination. Cal. Gov't Code § 12940(k). Negligent retention occurs when a defendant knows or should know that retaining an employee creates a risk of harm and that harm later materializes. *See Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996). Negligent supervision occurs when a defendant knows or should know that a person "[can]not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am.*, Inc., 81 Cal. App. 4th 377, 395 (2000). Lastly, "the statute of limitations for a negligent supervision [and retention] claim is two years." *Ford v. Wells Fargo Home Mortg.*, No. 08-4276 SC, 2008 WL 5070687, at *5 (N.D. Cal. Dec. 1, 2008) (citing *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 357 (2008)); *see also* Cal. Civ. Proc. Code § 335.1.

Here, Brent brings a negligent supervision and negligent retention claim against Boeing for failing to prevent racial discrimination and harassment. Boeing states and supports with admissible evidence that it took all reasonable steps to prevent discrimination, harassment, retaliation, through its policies, complaint procedures, internal resources, and investigation processes. (Krubski Decl. ¶¶ 2–5; Churley Decl. ¶ 3.) Boeing further argues that Brent provides no facts to show that after June 14, 2015, Boeing was placed on notice that Sawyer, or any other Boeing employee, posed a particular risk to Brent. Additionally, Brent did not raise racial discrimination or harassment claims until he filed a DFEH complaint in February 2017, well after 2014, when Boeing ordered Sawyer to remove the "redneck" cartoon and refrain from using his nickname "redneck" in the workplace. (Churley Decl. Ex. 12). Brent opposes Boeing's argument by asserting that Boeing had sufficient notice to know that Sawyer

could not act properly without supervision. Further, Boeing had already counseled and ordered Sawyer to refrain from making racist comments and to remove racist material, hence, it was implausible to suggest that Boeing was unaware of the risks posed by Sawyer. (Churley Decl. ¶ 8; Churley Dep. at 41:16–42:2; Brent Dep. at 164:7–17.)

As the Court previously discussed, alleged conduct that occurred outside the statute of limitations is time barred and may not be the basis for Brent's failure to supervise and retain claims. *See Ford v. Wells Fargo Home Mortg.*, No. 08-4276 SC, 2008 WL 5070687, at *5 (N.D. Cal. Dec. 1, 2008) (citing *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 357 (2008)); *see also* Cal. Civ. Proc. § 335.1. Accordingly, the Court is limited to addressing conduct that occurred after June 14, 2015, two years before Brent filed his Complaint.

Here, Brent does not provide the Court with facts to support a claim that Boeing's conduct was negligent. First, Brent provides no facts to establish that Sawyer made racist comments or displayed racist materials after June 14, 2015. *Nason-Chick v. Wal-Mart Stores, Inc.*, No. EDCV08515SGLRCX, 2009 WL 10670540, at *16 (C.D. Cal. June 26, 2009) (Plaintiff provided no evidence that suggested that Defendant had any reason to know that employee would create the "risk or hazard" of harassment or discrimination). Instead, Brent solely relies on the incident that transpired in 2014, when Boeing ordered Sawyer to remove a "redneck cartoon" and refrain from using the nickname "redneck." Nor does Brent address what reasonable steps Boeing failed to perform in order to prevent discrimination against Brent. *See id.* (finding that plaintiff provided substantial evidence to show that defendant's action to prevent harassment and discrimination were not reasonable). At summary judgment, Brent must provide more than conclusory statements, he must provide facts and evidence that Boeing failed to take all reasonable steps to prevent discrimination and harassment. *See Capital Cities*, 50 Cal. App. 4th at 1054.

Therefore, summary judgment on this issue is proper and the Court **GRANTS** Boeing's Motion as to Brent's negligent supervision and negligent retention claim.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Boeing's Motion for Summary Judgment (ECF No. 55).  All other dates and deadlines in this action are **VACATED** and taken off calendar.  The Parties are ordered to meet and confer to prepare a joint proposed judgment and file the proposed judgment no later than October 1, 2019.

**IT IS SO ORDERED.**

September 17, 2019

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**